IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Jeanne Whitman, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Legal Helpers Debt Resolution, LLC; ) <br> Global Client Solutions, LLC; and ) <br> Macey, Aleman, Hyslip & Searns, ) <br> ) <br>     Defendants. ) <br> _____ ) | Civil Action No.: 4:12-cv-00144-RBH <br><br> **ORDER** |

This lawsuit arises from a dispute between Plaintiff Jeanne Whitman ("Plaintiff") and Defendants, who are in the debt resolution and credit counseling business, regarding supposedly unfair business practices on the part of Defendants. Currently pending before the Court is Defendants' Motion to Compel Arbitration. [Doc. # 28.] For the forgoing reasons, the Motion is granted.

## Background

In April 2012, Plaintiff, who had amassed a significant amount of credit card debt, received a solicitation from Defendants offering to assist her in settling her debt. [*See* Am. Compl., Doc. # 21, at ¶¶ 9–11; Mot. to Compel, Doc. # 28, at 3–4.] Based upon that offer, Plaintiff, along with her husband, chose to enter into a contract with Defendants (the "Agreement"). [*Id*.] The Agreement contained the following arbitration provision, which was located above Plaintiff's signature:

> **XVI. Arbitration**: In the event of any claim or dispute between Client and "LHDR," related to the Agreement or related to any performance of any services related to this Agreement, such claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request. The parties shall initially agree on a single arbitrator to resolve the dispute. The matter may be arbitrated either by the Judicial Arbitration Mediation Service or American Arbitration Association, as mutually agreed upon by the parties or selected by the party filing

>   the claim. The arbitration shall be conducted in either the county in which Client resides, or the closest metropolitan county. Any decision of the arbitrator shall be final and may be entered into any judgment in any court of competent jurisdiction. The conduct of the arbitration shall be subject to the then current rules of the arbitration service. The costs of arbitration, excluding legal fees, will be split equally or be borne by the losing party, as determined by the arbitrator. The parties shall bear their own legal fees.

[Mot. to Compel, Doc. # 28, at 4; Resp., Doc. # 30, at 3.]

According to Plaintiff, Defendants failed to honor certain obligations under the Agreement, while the Agreement itself failed to disclose certain key information to Plaintiff. [Am. Compl., Doc. # 21, at ¶¶ 50–56.] Plaintiff filed suit against Defendants on January 13, 2012, and filed her Amended Complaint on April 18, 2012. Defendants responded by filing the Motion to Compel Arbitration at issue.

## Legal Standard

The parties do not dispute that this contract is governed by the Federal Arbitration Act ("FAA"). The FAA serves as "a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." *Am. General Life and Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001)). The Fourth Circuit has therefore instructed that district courts should "resolve 'any doubts concerning the scope of arbitrable issues in favor of arbitration.' " *Id*. (quoting *Hill v. PeopleSoft USA, Inc*., 412 F.3d 540, 543 (4th Cir. 2005)). In a recent per curiam opinion, the U.S. Supreme Court reiterated the federal policy favoring arbitration, and explained that "it is a mainstay of the Act's substantive law that attacks on the validity of the contract, as distinct from attacks on the

2

validity of the arbitration clause itself, are to be resolved by the arbitrator in the first instance, not by a federal or state court." *Nitro-Lift Techs, L.L.C. v. Howard*, 133 S.Ct. 500 (2012).

Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (quoting 9 U.S.C. § 2). Thus, although federal law governs the arbitrability of disputes, ordinary state-law principles[1] resolve issues regarding the formation of contracts. *Id.* Specifically, "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). For instance, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). If, however, only some of an arbitration agreement's provisions are invalid or unenforceable, the severability of the offending provisions – rather than invalidation of the arbitration agreement – would be the appropriate remedy. *In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274, 292 (4th Cir. 2007).

---

[1] In this case, the Court looks to the substantive law of South Carolina. A federal court sitting in diversity must apply the conflict of law provisions of the forum state. *Thornton v. Cessna Aircraft Co.*, 886 F.2d 85, 87 (4th Cir. 1989). Under the South Carolina choice of law rules governing contract actions, a contract is governed by the laws of the state in which the contract was made. *Livingston v. Atl. Coast Line R. Co.*, 176 S.C. 385, 391 (1935). Here, there is no dispute that the contract was made in South Carolina, and the parties both apply South Carolina law when discussing unconscionability..

3

**Discussion**

Plaintiff argues that the Motion to Compel Arbitration should be denied because the Agreement's arbitration provision was unconscionable under South Carolina law. The Court disagrees.

South Carolina law recognizes "[u]nconscionability . . . as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Fanning v. Fritz's Pontiac–Cadillac–Buick, Inc*., 322 S.C. 399, 403, 472 S.E.2d 242, 245 (1996).

> In determining whether a contract was "tainted by an absence of meaningful choice," courts should take into account the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause.

*Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 25, 644 S.E.2d 663, 669 (2007) (citation omitted). When analyzing whether an arbitration agreement is unconscionable, the Fourth Circuit instructs courts "to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." *Simpson,* 373 S.C. at 25, 644 S.E.2d at 668 (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir.1999)). "Plaintiff bears the burden of showing that the arbitration provisions in the agreements at issue are unenforceable." *Smalls v. Advance Am.*, No. 2:07–3240–TLW, 2008 WL 4177297, at *14 (D.S.C. Sept. 5, 2008) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000)).

## I.     The final two sentences of the arbitration provision should be stricken

The vast majority of Plaintiff's unconscionability arguments focus on the final two sentences of the arbitration provision: "The costs of arbitration, excluding legal fees, will be split equally or be borne by the losing party, as determined by the arbitrator. The parties shall bear their own legal fees." [Mot. to Compel, Doc. # 28, at 4; Resp., Doc. # 30, at 3.] According to Plaintiff, this clause is unconscionable because (1) the clause is cost prohibitive because it requires Plaintiff to bear her own legal fees and to pay at least half of the costs of arbitration; and (2) the clause limits Plaintiff's ability to obtain damages, including her costs and attorneys fees, which are specifically available under the statutory provisions under which Plaintiff filed suit. [Resp., Doc. # 30, at 9, 13.]

Plaintiff's argument that the clause would subject her to prohibitively high fees is without merit. In a recent North Carolina federal case, *Stewart v. Legal Helpers Debt Resolution, LLC*, No. 2:11cv26, 2012 WL 1969624, at \*6 (W.D.N.C. June 1, 2012), a district court applying similar North Carolina law ruled that an identical arbitration clause was not unconscionable.

> The Plaintiff's argument that arbitration would subject him to prohibitively high fees, however, is simply speculative. First, the ARA calls for arbitration through either the Judicial Arbitration Mediation Service (JAMS) or the American Arbitration Association (AAA), two well-known arbitration forums, both of which are consumer friendly and affordable. Under JAMS, the consumer's fees for arbitration is only $250. Under the AAA, individual consumers with claims under $10,000 are responsible for one-half of the arbitrator fees up to a maximum of $125; for claims not exceeding $75,000, the maximum fee for which an individual consumer is responsible is $375. Further, while each party is required to bear their own attorney's fees, the Plaintiff has not shown that the costs of retaining counsel for the purposes of arbitration would be any more cost prohibitive than retaining counsel for the purposes of maintaining this action in federal court.

*Id.* (internal citations and footnotes omitted).

5

However, *Stewart* did not address whether the clause limited a plaintiff's ability to obtain statutorily authorized damages. Courts that have examined arbitration clauses that limit a plaintiff's statutory right to damages or attorney's fees generally find those clauses unenforceable. *See, e.g.*, *In re Cotton Yarn*, 505 F.3d at 293 (finding arbitration provision acceptable after concluding that terms "do not prevent the plaintiffs from effectively vindicating their statutory rights"); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1060 (11th Cir. 1998) (holding that language in arbitration agreement contained language "fundamentally at odds with the purposes of Title VII because it completely proscribes an arbitral award of Title VII damages."); *Hooters of Am., Inc.*, 39 F.Supp.2d 582, 621–22 (D.S.C. 1998) (examining with approval "[s]everal . . . cases" in which courts have refused to enforce arbitration agreements or portions of agreements because they deprived a party of statutorily-mandated rights).

Perhaps sensing an issue with the clause's language, Defendants argue in their Motion that "each party bears its own fees, except where statutory claims are being arbitrated and such statutes provide for an award of fees." [Mot. to Compel, Doc. # 28, at 21.] This is simply not a reasonable interpretation of the clause at issue, which plainly states, "The parties shall bear their own legal fees." Given this limitation, the Court finds that the final two sentences of the arbitration provision unduly limit Plaintiff's statutory rights to damages and attorney's fees, and are thus unenforceable.

However, this does not require that the Court invalidate the entire arbitration provision. As the Fourth Circuit has instructed, "the district court must . . . consider whether severance of the [unenforceable provision], rather than invalidation of the arbitration agreement[], would

6

be the appropriate remedy.*" In re Cotton Yarn*, 505 F.3d at 292. Here, the final two sentences of the arbitration provision are easily severable, and actually make the Agreement and the arbitration provision itself internally consistent.[2] Additionally, Plaintiff argued that the sentences could be severed from the agreement, while Defendants conceded that the Court "is free to [sever terms from the arbitration provision] if it finds such terms troubling." [*See* Resp., Doc. # 30, at 14–15; Reply, Doc. # 33, at 16–17.]

## II.     **The remaining arbitration provision is not unconscionable**

Even with the final two sentences severed from the arbitration provision, Plaintiff argues that the provision was unconscionable because (1) her debt load has increased as a result of the Agreement; (2) the Agreement and arbitration provision were presented as "take-it-or-leave-it"; and (3) the arbitration provision was not conspicuous. The Court finds these arguments without merit.

First, to the extent Plaintiff attacks the Agreement as a whole, the U.S. Supreme Court has clearly held that such an attack should be "considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006); *see also Nitro-Lift Techs, L.L.C. v. Howard*, 133 S.Ct. 500 (2012).

Second, Plaintiff fails to argue that she lacked a choice when she entered into the Agreement. Even if the Agreement was presented in a "take-it-or-leave-it" basis, such a

---

[2] Plaintiff argued that the clause is inconsistent with a prior provision in the Agreement which states that "[i]f any legal action is brought regarding this Agreement, the prevailing party shall be entitled to legal fees and courts cost." [Resp., Doc. # 30, at 8.] In light of this Court's finding that the clause should be stricken because it limits Plaintiff's statutory rights, the Court has eliminated any potential inconsistency.

7

contract is "not *per se* unconscionable." *Simpson.*, 373 S.C. at 27, 644 S.E.2d at 669. Here, Plaintiff was not required to employ the services of a debt reduction company, nor do Defendants have a monopoly on the debt resolution industry. "Thus, if Plaintiff did not want to be limited to arbitration, Plaintiff did not have to enter into the Agreement with [Defendants]." *Thomas v. Matrix Sys. Aut. Finishes, LLC*, No. 6:09-2169-HFF, 2010 WL 147956, at *6 (D.S.C. Jan. 14, 2012) (applying similar unconscionability law).

Third, the arbitration provision was not hidden. In fact, the provision was in a paragraph titled "Arbitration," the title appeared to be in bold print, and the provision was placed near the signature block. *See Thomas*, 2010 WL 147956, at *6 n.3 ("In this case, the arbitration clause appears on the signature page of a five-page agreement in a clearly enumerated and delineated paragraph with the bold-faced heading "Arbitration." Thus, the placement of the arbitration clause within the contract fails to render it procedurally unconscionable.").

Considering the Fourth Circuit's admonition to focus on whether the arbitration agreement is "geared towards achieving an unbiased decision by a neutral decision-maker," coupled with Plaintiff's burden of proof, the Court cannot say that the arbitration provision is unconscionable.

### III.     All of Plaintiff's claims are subject to arbitration

Defendants also contend that all of Plaintiff's claims are subject to arbitration. [*See* Mot. to Compel, Doc. # 28, at 1, 5.] As her Response focuses on the appropriateness of the arbitration provision, Plaintiff does not appear to disagree with Defendants' contention. Further, the arbitration provision governs "any claim or dispute between [Plaintiff] and [Defendants] related to the Agreement or related to any performance of any services related to this

Agreement . . . ." [Mot. to Compel, Doc. # 28, at 4; Resp., Doc. # 30, at 3.] Each claim of Plaintiff's stems directly from Defendants performance under the Agreement, failure to perform under the Agreement, or some bad conduct relating to the Agreement. [*See* Am. Compl., Doc. # 21, at ¶¶ 57–104.]

Additionally, the Fourth Circuit has explained that a disputed issue is arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 381 (4th Cir. 1998) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). This "heavy [federal] presumption of arbitrability" dictates that any ambiguity in the scope of the Agreement's arbitration clause be resolved in favor of arbitration. *Id.* "Consequently, because it can fairly be said that [Plaintiff's claims] fall within the 'scope of the Agreement,' those [claims] must be submitted to arbitration." *Id.*; *see also Hinson v. Jusco Co., Ltd.*, 868 F. Supp. 145 (D.S.C. 1994) (finding that fraud, negligent misrepresentation, and civil conspiracy claims were subject to arbitration because they ultimately arose out of a violation of the contract at issue); *Partain v. Upstate Auto. Group*, 378 S.C. 152, 662 S.E.2d 426 (2008) (holding that South Carolina Unfair Trade Practices Act was subject to arbitration as there was a significant relationship between the plaintiff's claim and the underlying agreement).

Thus, the Court concludes that the arbitration clause is enforceable and governs all the claims asserted in Plaintiff's Complaint.

**Conclusion**

Based on the foregoing, **IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Arbitration [Doc. # 28] is **GRANTED**, and the parties are ordered to submit the underlying claims to arbitration in accordance with the Agreement's arbitration provision (as modified by this Court to delete the last two sentences).

**IT IS FURTHER ORDERED** that the case is hereby stayed for a period of one year.[3] The parties shall make a filing on the docket immediately upon the conclusion of arbitration.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell<br>
R. Bryan Harwell<br>
United States District Judge

Florence, South Carolina
December 13, 2012

---

[3] The parties in this case have already conducted a great deal of discovery and should be well prepared for arbitration. Additionally, this will ensure that the parties are diligent in timely completing arbitration.